ALAꞋASA FILIFILI MAILEI, Plaintiff,

v.

LEOPOLE FAUMUINA and FANENE AIPOPO
LAULU for the FANENE FAMILY, Defendants.

LT No. 12-90

---

ALAꞋASA FILIFILI for the ALAꞋASA FAMILY, Claimant,

v.

TUIAꞋANA MOI for the TUIAꞋANA FAMILY, MOEAꞋI ULIATA for
the MOEAꞋI FAMILY, and SEIGAFO E. SCANLAN, Objectors.

LT No. 76-90
LT No. 78-90
LT No. 79-90

---

ALAꞋASA FILIFILI MAILEI, Plaintiff,

v.

FANENE AIPOPO LAULU, FONOTI TAFAꞋIFA, TUIAꞋANA MOI,
MOEAꞋI FAMILY, and TAUILIILI PEMERIKA, Defendants.

LT No. 25-96

---

ALAꞋASA FILIFILI M., Claimant,

v.

TUITOGA PUAILOA FANENE, FANENE A. LAULU for FANENE
FAMILY MEMBERS, TUIAꞋANA MOI, ISEULAOLEMOANA S.
SOTOA, Legal Representative of the ESTATE OF SALOFI R.
SOTOA, PEMERIKA TAUILIILI, LAUMA VALOAGA
V. MOANANU, and FONOTI TAFAꞋIFA, Objectors.

LT No. 14-96

206

High Court of American Samoa
Trial Division

August 5, 1997

Before RICHMOND, Associate Justice, and ATIULAGI, Associate Judge.

Counsel: For Plaintiff/Claimant Alai`asa Filifili Mailei for the Alai`asa Family, Tautai A.F. Faalevao
For Defendant/Objector Fanene Aipopo Laulu for the Fanene Family, Defendant Leopole Faumuina, and Objector Tuitoga Puailoa Fanene, Cherie Shelton Norman
For Defendant/Objector Tuia`ana Moi for the Tuia`ana Family, Asaua Fuimaono
For Objector Moea`i Uilata for the Moea`i Family and Defendant Moea`i Family, Aumoeualogo Salanoa Soli
For Objector Seigago E. Scanlan, *Pro Se*
For Defendant/Objector Tauiliili Pemerika and Objectors Iseulaolemoana S. Sotoa, Legal Representative of the Estate of Salofi R. Sotoa, Tuitoga Puailoa Fanene, and Lauma Valoaga V. Moananu, Charles V. Ala`ilima
For Defendant/Objector Fonoti Tafa`ifa, Afoa L. Su`esu`e Lutu

These six consolidated actions came regularly for trial on January 6, 1997, and concern the ownership of certain lands. Plaintiff/claimant Alai`asa Filifili Mailei for the Alai`asa family (collectively "Alai`asa") proceeded first and rested on January 10, 1997. All other parties then moved for involuntary dismissal of the Alai`asa claims. These parties, other than defendant/objector Tuia`ana Moi for the Tuia`ana family (collectively "the Tuia`ana"), objector/defendant Moea`i Uilata for the Moea`i family (collectively "the Moea`i"), and objector Seigafo E. Scanlan (for the Seigafo family) (collectively "the Seigafo"), also asked for assessment of

208

attorney's fees and costs against the Alai`asa or for sanctions of this nature under T.C.R.C.P. 11 against Alai`asa Filifili or his counsel, or both. The Fanene also requested imposition of punitive damages against the Alai`asa.

The parties orally argued the motions on January 14, 1997. The court took the motions under advisement and established a schedule for filing further written arguments on the motions. The court has examined the evidence and weighed counsel's oral and written arguments. We will, based on the findings of fact and for the reasons set forth below, grant the motions to dismiss relating to lands previously adjudicated by this court as owned by defendant/objector Fanene Aipopo Laulu for the Fanene Family (collectively "Fanene"), defendant/objector Fonoti Tafa`ifa (for the Fonoti family) (collectively "the Fonoti"), defendant/objector Tauiliili Pemerika ("Tauiliili"), objector Iseulaolemoana S. Sotoa, legal representative of the Estate of Salofi R. Satoa ("Satoa"),[1] and the Tuia`ana.[2] We will decline, in our discretion under T.C.R.C.P. 41(b), to render any judgment with respect to the Moea`i's motion to dismiss until the close of all the evidence. We will also order the Alai`asa to pay reasonable attorney's fees and costs to the successful movants, and issue an order to Alai`asa Filifili and his counsel to show cause why either or both of them should not be sanctioned for violations of T.C.R.C.P. 11 in prosecuting these actions. We will not impose punitive damages.

### Findings of Fact

The land at issue ("parcel A") consists of approximately 176.85 acres and is located in part of the area known as Malaeimi on the Island of Tutuila, American Samoa. Parcel A is bounded on the north side in part by the main east-west public highway and in part by another parcel of land ("parcel B"), comprised of about 62.4 acres, lying between the main highway and parcel A. The boundaries on the remaining sides of parcel A are roughly defined by the neighboring villages of Nu`uuli to the east, Faleniu to the west and Tafuna to the south.[3]

---

[1] The caption in LT No. 14-96 originally named Salofi R. Sotoa, who is deceased, as a party. His estate, by Iseulaolemoana S. Sotoa as legal representative, actually filed the objection with the Territorial Registrar. Accordingly, on our own motion, we corrected the caption in LT No. 14-96 to reflect these facts.

[2] We note for counsel's benefit that based on out analysis of the motions to dismiss, in hindsight at least, these movants could have prevailed on motions for summary judgment. Although the motions for summary judgment would require elaborate documentary support in these actions, the motions would have avoided several days of trial.

[3] The Malaeimi area also extends to the north from the main east-west public highway and is bounded there by the villages of Nu`uuli to the east, Faleniu to the west and Fagasa to the north. Malaeimi was once but is no

On June 13, 1995, Alai`asa filed an action, LT No. 25-95, for an injunction preventing the Fanene, the Tuia`ana, the Moea`i,[4] the Fonoti, and Tauliili from interfering with his survey of parcel A. The court's order, entered on July 25, 1995, upon these parties' stipulation, authorized Alai`asa to proceed with this survey without interference and to file a title registration claim.

The Alai`asa, Tuia`ana, Moea`i and Seigafo titles are *matai* of the Village of Faleniu. The Fanene title is a *matai* of the Village of Nu`uuli.

On October 27, 1995, Alai`asa filed the title registration claim with the Territorial Registrar. The Fanene, the Tuia`ana, the Moea`i, the Fonoti, Tauliili, and Sotoa, objector Tuitoga Puailoa Fanene (a member of the Fanene but for the Puailoa family of Nuuuli), and objector Lauma Valoaga V. Moananu (for the Moea`i family) filed objections to Alai`asa's proposed title registration. The Territorial Registrar referred the matter to the Secretary of Samoan Affairs for dispute resolution proceedings, pursuant to A.S.C.A. § 43.0302. On July 17, 1996, the Deputy Secretary of Samoan Affairs issued a certificate of irreconcilable dispute, and the matter was submitted to the Land and Titles Division of the High Court for judicial determination.

The court consolidated six actions in due course. Originally, we included LT No. 26-96 in the consolidation, but later we dismissed this action and referred the matter to the Land Commission for completion of the administrative process applicable to the proposed registration of the lease of communal land involved in that action. On December 30, 1996, we delayed ruling on Alai`asa's motion to set aside the dismissal without prejudice in 1987 of LT No. 34-81, involving a portion of parcel A and the same or related parties, and to add this action to the consolidation, pending developments in the trial scheduled to begin only one week later.

The rulings on these motions to dismiss depend upon the legal impact of prior judicial decisions and title registrations. Hence, we will only briefly summarize Alai`asa's evidence during his case-in-chief on the substance of his title claim.

The Alai`asa presented testimony by several witnesses that the Alai`asa own parcel A as communal land as a result of original possession and

---

longer legally recognized as a village. *Matai* of the four surrounding villages and Faleniu assert from time to time claims affecting Malaeimi, and the precise traditional boundaries of these villages and Malaeimi are still uncertain. *See Puailoa v. Estate of Lagafuaina*, 12 A.S.R.2d 54 (Land & Titles Div. 1989).

[4] When LT No. 25-95 was filed, objector Moea`i Uliata was deceased. He was the head *matai* or *sa`o* of the Moea`i family when LT No. 77-90 was filed. The family has not selected the successor *sa`o*.

cultivation long before 1900. Some of these witnesses appear to include parcel B as the Alai`asa's communal land as well. However, the Alai`asa has not claimed parcel B by the pleadings and arguments. The Alai`asa also provided supporting documents evidencing a sale in 1888 by the Alai`asa of some nine acres of land in the Malaeimi area, but without clear proof of the exact location of this parcel and rejection in 1894 of the Fanene's asserted ownership of these nine acres by the Land Commission and Supreme Court of Samoa in Western Samoa, which then had jurisdiction over controversies involving land in Tutuila.

We take judicial notice of the decisions of this court in the consolidated actions in *Fanene v. Magalei*, LT Nos. 64-77, 74-77, 54-77, 61-74, 60-77, 66-77, 73-77, 1090-90, 62-77, 63-77 and 72-76 (Land & Titles Div. 1980) ("the 1977 actions"), bearing directly upon the title to parcel B and various sub-parcels within parcel A. We also take judicial notice of the decision of this court in the earlier action, *Tuutau v. Fanene*, Case No. 1-1931 (1932) ("Case No. 1-1931"), dealing definitively with the title to parcel B. We will relate these parcels and sub-parcels to exhibit No. 12 or exhibit No. 14, or both, to particularize our findings for the parties and their counsel.[5]

This court decided in Case No. 1-1931 and reconfirmed in the 1977 actions that the Fanene own parcel B as communal land. Parcel B is shown on exhibit No. 12 as containing approximately 62 acres and on exhibit No. 14 as containing approximately 62.4 acres. Parcel B is registered with the Territorial Registrar as the Fanene's communal land.

This court also adjudicated ownership of our designated sub-parcels of parcel A in the 1977 actions, as follows:

1. <u>Sub-parcel A-1.</u> The Fanene were awarded as communal land the area to the east of parcel B. This area is displayed on exhibit 14, marked parcel "1" and is about 85.402 acres. We cannot ascertain from the evidence whether the Fanene has registered sub-parcel A-1.

2. <u>Sub-parcel A-2.</u> The Fanene were awarded as communal land the area bordering the southwest side of parcel B. This area is depicted on exhibit No. 12 in light blue and on exhibit No. 14 as parcel "2" and encompasses about 4.418 acres.[6] Leopole, a member of the Fanene, has the house on

---

[5] We are not definitively defining boundaries by metes and bounds, or by other means, through our references to exhibits Nos. 12 and 14. We immediately have before us neither issues over any existing boundary disputes among the parties nor adequate evidence to decide any such controversies.

[6] The Alai`asa also claims this specific area as communal land in LT No. 78-90, as well as part of Parcel "A" as a whole in LT No. 14-96. This area

sub-parcel A-2 that is the subject of the Alai`asa encroachment claim in LT No. 12-90.

3. Sub-parcel A-3. The Fonoti were awarded as communal land the area immediately south of sub-parcel A-1.[7] This area is shown on exhibit No. 12 below a solid blue line and is mostly shaded light blue.[8] Sub-parcel A-3 is registered as the Fonoti's communal land.

4. Sub-parcel A-4. Tauiliili owns as individually owned land the area contiguous to the southwest portion of sub-parcel A-3. This area is depicted on exhibit No. 12 in light green and contains approximately 24.4 acres. A portion of sub-parcel A-4 actually lies outside of parcel A. Sub-parcel A-4 is registered as Tauiliili's individually owned land.

5. Sub-parcel A-5. Sotoa was awarded as individually owned land the area immediately next to the northwest portion of sub-parcel A-4. This area is presented on exhibit No. 12 in light yellow and consists of approximately 21.15 acres. Most of sub-parcel A-5 is registered as Sotoa's individually owned land.

6. Sub-parcel A-6. Uiva Te`o, who is not a party to the present actions, was awarded as individually owned land the area that borders portions of the west side of sub-parcel A-4 and south side of sub-parcel A-5. This area is shown on exhibit No. 12 in light blue. A small triangular shaped portion at the northeast corner of sub-parcel A-6, lodged between sub-parcel A-4

---

contains 4.41 acres according to the survey filed in LT No. 78-90. *See* exhibit No. 4A.

[7] We do not approximate the size of the Fonoti's award from the evidence before us. The Fonoti claimed approximately 34.04 acres in LT No. 61-77, 4.33 acres in LT No. 66-77, and 46.79 acres in LT No. 60-77, a total of 79.04 acres, but were awarded a slightly lesser amount when the court found that Fanene and the Fagaima family owned portions of the 34.04 acres.

[8] The solid blue boundary line between sub-parcel A-1 and sub-parcel A-3 was established by agreement between the Fanene and the Fonoti. *See* exhibit No. 13. Apparently, the Fonoti have registered only the shaded light blue area in sub-parcel A-3 with the Territorial Registrar. A small triangular area near the northwest corner of the Fonoti's registered land apparently conflicts with the agreement reached by the Fanene and the Fonoti. A larger area at the west end of the Fonoti's registered land overlaps with Sotoa's registered land (our designated sub-parcel A-5). Another larger area at the southwest end of the Fonoti's registered land overlaps with Tauiliili's registered land (our designated sub-parcel A-4). These mutually encroaching areas are depicted on exhibit No. 12. As previously indicated, however, we are not presently examining overlay issues.

212

and sub-parcel A-5, is within parcel A. Sub-parcel A-6 is registered as Uiva Te'o's individually owned land.

7. Sub-parcel A-7. The Tuia'ana were awarded as communal land the area directly adjacent to the northern boundary of sub-parcel A-5 and to the western boundary of sub-parcel A-2.[9] This area is displayed on exhibit No. 12 unshaded. This area is also shown on exhibit No. 16. However, it is not yet clear how the survey in exhibit No. 16 comports with sub-parcel A-8, identified below. Sub-parcel A-7 is not registered.

Based on Case No. 1-1931 and the 1977 actions, this court has adjudicated title to all but one small area within parcel A. This area is an irregular crescent shaped area, which we designate as sub-parcel A-8, and is shown on exhibit No. 12, bounded on the northeasterly side by sub-parcel A-7, on the south side by sub-parcel A-5, and on the west side by the western boundary of parcel A, and is partly unshaded and partly shaded light blue. We are also unaware of any title registration of this area, though Kolone Moea'i Maui'a is indicated as the owner of the southern portion of light blue portion. The Alai'asa, the Tuia'ana, the Moea'i and the Seigafo, and perhaps others, may have outstanding competing claims to some or all parts of sub-parcel A-8.

The named parties to Case No. 1-1931 and the 1977 actions and notice given in the 1977 actions are important factual factors in deciding the motions to dismiss.

"Alaia of Faleniu," representing Alai'asa, was a party in Case No. 1-1931. He objected to the Fanene's proposed title registration of parcel B on February 18, 1931, and withdrew his objection on August 24, 1932, before the trial. He was not present at the trial on September 7, 1932.

"All of the *Matai* of Faleniu Village" were parties as a group to the 1977 actions. Alai'asa Filifili and his brother, who then held the Alai'asa title, were residing outside of American Samoa during the pendency of the 1977

---

[9] The Alai'asa also separately claim as communal land in LT Nos. 76-90 and 77-90 two specific plots that coincide at least partially with this area. The first plot, containing about 4.16 acres per the survey filed in LT No. 76-90, lies across and appears to be entirely within the northern part of this area. *See* exhibits Nos. 3 and 3A. The second plot, containing about 2.98 acres per the survey filed in LT No. 77-90, lies across but appears to extend beyond the southern part of this area. *See* exhibits Nos. 5 and 5A. Part of this area lies between the first and second plots and appears to contain several more acres. The two plots and the part in between are included in Alai'asa's entire claim in LT No. 14-96, which we have designated as Parcel A.

actions. However, their sister Fanoia Alai`asa Pagofie, was residing in the Territory in 1977. She was then age 40 years, a school teacher, healthy and strong, and apparently the only adult member of the immediate family here.

Tuana`itau Tuia discussed the 1977 actions with Pagofie. He was then an experienced, and is still an active, legal practitioner in land and *matai* title judicial controversies. He testified at the present trial as a member of the Alai`asa. Pagofie contributed funds to the Faleniu *matai*'s cause in the 1977 actions and effectively joined this group party on Alai`asa's behalf.[10] Tuana`itau took Pagofie to the courthouse to testify in the 1977 actions. However, upon arrival, she was told that Tuia`ana Moi was selected to testify on behalf of the Faleniu *matai*. She did not testify.

On May 5, 1976, before the Territorial Registrar, the Fanene offered to register the title to the land adjudicated in the 1977 actions.[11] The Territorial Registrar publicly noticed the offer from May 6 to July 7, 1976, a period of 63 days. On July 8, 1976, the Registrar referred the offer to the Secretary of Samoan Affairs for dispute resolution proceedings under 11 A.S.C. 1002 (1973 ed.) (now A.S.C.A. § 43.0302). The list of objectors, including the Faleniu *matai*, comports with the eventual parties to the 1977 actions. The Secretary, after hearings, issued the jurisdictional certificate of irreconcilable dispute on September 15, 1977, and the matter was referred to this court for judicial determination.

On March 23, 1977, at a pre-trial conference, the parties attending agreed that the court would issue a public notice, distributed among various news media and American Samoa Government offices, of the consolidated cases and trial date on October 3, 1977, and of the parties' need to register lands by certain dates. The notice was published in the Samoa News and Government News Bulletin at the very least.

### Discussion

*1. The Procedural Issue*

---

[10] Pagofie was a party in *Tuia`ana v. Pagofie,* LT No. 34-81, which this court dismissed without prejudice in 1987, on its own motion, for lack of prosecution. LT No. 34-81 generally dealt with the land in sub-parcel A-6 and sub-parcel A-7, and dismissal of LT No. 34-81 could result in a favorable ruling for Tuia`ana in any subsequent title litigation. Hence, the Alai`asa moved to set aside this dismissal and consolidate LT No. 34-81 with the present actions. We deferred deciding this motion, on December 30, 1996, a week before the trial, pending developments during the trial.

[11] The offer was for 265.9 acres. Again, however, we are not presently dealing with precise acreage and are not making any attempt to equate the adjudicated acreage with the actual size of either this offer, parcel A, or parcel A and parcel B combined.

Movants moved at the close of the Alai`asa's case "for dismissal on the ground that upon the facts and the law [the Alai`asa have) shown no right to relief." T.C.R.C.P. 41(b). Rule 41(b) mirrors former F.R.C.P. 41(b), now embodied in F.R.C.P. 52(c) and renamed a "Judgment on Partial Findings."

The Alai`asa counter that the Federal Rules of Civil Procedure are inapplicable in proceedings before the court's Land and Titles Division. A.S.C.A. § 3.0242(a). They urge that in the interests of justice, we should use our discretion, under A.S.C.A. § 3.0242(b), not to strictly employ T.C.R.C.P. 41(b), and require movants to introduce evidence in support of their respective land claims before deciding this case.[12]

◼ The court has, as further directed by A.S.C.A. § 3.0242(a), prescribed special rules for land and titles matters. T.C.R.L.T. 1-8. The court has also emulated the Federal Rules of Civil Procedure, as contemplated by A.S.C.A. § 43.0201(a), to govern civil proceedings generally. There is no restriction by either statute or court rule on using the principles underlying the Federal Rules in land and titles matters. The clear intent of A.S.C.A. § 3.0242 read as a whole, along with A.S.C.A. § 43.0304 on interlocutory orders, is to allow the court flexibility to fashion practice and procedure in land or title cases as will facilitate proper adjudication of these matters, not to absolutely foreclose the use and guidance of the concepts of the Federal Rules.

◼ The Land and Titles Division has previously adopted the principle underlying T.C.R.C.P. 41(b) and stated that "justice and convenience [are] disserved by requiring the many defendants in this case to present evidence and arguments in the slim hope that the plaintiff's case would be struck by the evidentiary equivalent of lightning." *See Willis v. Fai`ivae,* 10 A.S.R.2d 121, 140-142 (Land & Titles Div. 1986). We find no basis for disregarding this precedent. The Alai`asa have had a fair trial and opportunity to present their case. Thus, we will grant a movant's motion to dismiss at the close of a claimant's case if the claimant cannot establish in favor of his position even at this point in the trial a preponderance of the evidence. *Id.* at 141.

2. *The Constitutional Protection of Land*

---

[12] Section 3.0242(b) reads:

> In any matter of practice or procedure not provided f or, or where the strict compliance with any rule of practice or procedure may be inequitable or inconvenient, the land and titles division may act in each case in such manner as it considers to be most consistent with natural justice and convenience.

Article I, section 3, of the Revised Constitution of American Samoa shields Samoans from "alienation of their land and destruction of the Samoan way of life and language." This constitutional policy has unwaveringly endured the entire 97-year history of American Samoa and is a peerless cornerstone of public doctrine in the Territory. *See* Cession of Tutuila and Aunuu, April 17, 1900, Chiefs of Tutuila—United States, and Cession of Manu'a Islands, July 16, 1904, King and Chiefs of Manu'a-United States.

The Alai'asa seek to enlist this constitutional provision to support their land claims in this case, and argue that article I, section 3, commands the court to review land disputes with a biased eye in favor of communal land claims and against claims of individual ownership. They suggest that the constitutional provision mandates that the court presume all land to be communal land, and to "shift the burden" of persuasion to those with claims of individual ownership. The Alai'asa would have us award sub-parcel A-4 and sub-parcel A-5 to the Alai'asa, even though they are registered as the lands Tauiliili and Sotoa, because these sub-parcels were registered as "individually owned land." In other words, the Alai'asa contend that the constitutional policy statement requires this court to invalidate any and every registration of individually owned land.[13]

■ While we concur that article I, section 3, is an important statement of policy, we find nothing in that constitutional provision which prohibits the alienation of communal land to other Samoans, nor limits the categories of Samoan land ownership. The concept of individually owned land was introduced by Samoans, *see Fania v. Sipili,* 14 A.S.R.2d 70, 71-72 (Land & Titles Div. 1990), condoned by the High Court, *see Puailoa v. Estate of Lagafuaina,* 19 A.S.R.2d 40, 46 (App. Div. 1991), and continuously sanctioned by the Legislature of American Samoa via statute since at least 1949. *See* A.S.C. § 905 (1949 ed.); A.S.C. §§ 9.0103, 10.0112, 12.0201 (1961 ed.); 27 A.S.C. §§ 402, 1201 (1974 ed.); A.S.C.A. §§ 37.0101, 37.1502 (1981 ed.); A.S.C.A. §§ 37.0101, 37.1502 (1992 ed.)

■ Like all custom and cultures, Samoan custom and culture is fluid, alive, evolving, and adapting to changing conditions. Samoan society has accepted individually owned land as a legitimate form of ownership in the twentieth century. Therefore, we reject the proposition that individually owned land is inconsistent with article I, section 3, of the Revised Constitution, refuse to adopt in land disputes any requirement of "burden shifting" to the detriment of those with claims of individual

---

[13] While the Alai'asa stop short of making this sweeping statement, we believe that this is the logical implication of adopting the Alai'asa's position in this case.

216

ownership of Samoan land, and decline to contradict precedent and to effectively abolish individual ownership of land.

Instead, we turn to two other legal principles that are determinative in this case.

### 3. *Res Judicata*

■ The Alai`asa are attacking the validity of the 1977 actions, and perhaps Case No 1-1931. The gravamen of the movants' motions for dismissal is the application of *res judicata,* the legal principle barring relief on previously adjudicated issues, when the finality of the judgment is the paramount interest. This court has adjudicated that the Fanene, the Fonoti, Tauiliili, Sotoa, or the Tuia`ana own almost all of the land now at issue in the 1977 actions and Case No. 1-1931.[14] "The need for certainty with respect to land titles warrants a great deference to the need for finality of judgments." *Reid v. Puailoa,* 23 A.S.R.2d 144, 146-47 (Land & Titles Div. 1993) (quoting *Ritter v. Smith,* 811 F.2d 1398, 1401-02 (11th Cir. 1987)).

■ A judgment in a prior case, between the same parties, or those in privity with them, and involving the same land title issue, is *res judicata* and therefore binds the parties and the court, notwithstanding the losing party's contention that the judgment did not accord with Samoan custom. *Aoelua v. Tela,* 10 A.S.R.2d 20 (Land & Titles Div. 1989), *aff'd* 12 A.S.R.2d 40 (App. Div. 1989); *Puailoa v. Estate of Lagafuaina,* 12 A.S.R.2d 84, 85 (Land & Titles Div. 1986), *aff'd* 19 A.S.R.2d 40, 46 (App. Div. 1991).

■ Arguments that the prior decision was contrary to custom and violative of treaty either were or should have been presented to the court deciding that case, and it would be totally contrary to the principles of finality underlying the judicial process to relitigate a matter that has

---

[14] In spite of the fact that much of this land is already registered, the Territorial Registrar accepted the Alai`asa's offer to registration. The Territorial Registrar should not process a proffered title registration if the title to the land is already registered. *See* the consolidated cases *Uilata v. Puailoa,* LT Nos. 8-87, 1-91, 39-93, 1-94, and 14-95, Order Remanding Matter to Land Commission and Denying Permission to File Survey with Registrar at 7 (Land & Titles Div. Oct. 17, 1996); A.S.C.A. § 37.0101(a). We cannot, however, fault the Registrar in this instance. Frankly, we probably misled the Registrar when we signed the stipulated order in LT No. 25-95, authorizing Alai`asa to proceed with his survey of parcel A and with filing his title registration claim.

already been fully litigated. *Tela v. Aoelua,* 12 A.S.R.2d 40, 42 (App. Div. 1989)

 The Alai'asa raise three points deserving comment. First, they assert that *res judicata* is a common law concept that is foreign and unsuitable to the Samoan legal system. *Res judicata* is a rule of substantive law and not of practice or procedure. *Willis v, Willis,* 4 A.S.R.2d 144, 145 (Land & Titles Div. 1987). The statute, A.S.C.A. § 3.0242(b), permitting the court to subordinate rules of practice or procedure to exigencies of justice and convenience cannot be used to set aside the postulate of *res judicata* and does not of itself empower the court to overturn a final judgment. The Alai'asa have failed to provide any convincing rationale for ignoring the interests of the finality of judgments in our system.

Second, the Alai'asa argue that they were not parties to the 1977 actions. They claim that only the family *sa'o* having *pule* or power over management of their communal lands can legally be a party to litigation, and that their *sa'o,* Alai'asa Filifili's brother, was residing outside of American Samoa and was not, and could not be made, a party to the 1977 actions.

 Contrary to the Alai'asa's assertion, no statute or judicial decision requires that the *sa'o* personally appear and defend claims against the family's communal land. Any family member can object to title registrations and defend the family's interests in land. *Tavaseu v. Paulo,* 3 A.S.R.2d 97, 98 (App. Div. 1986). Here the Alai'asa's interests were represented in the 1977 actions by the *matai* of Faleniu village and by his sister Fanoia Alai'asa Pagofie. Moreover, Fanoia was then advised by Tuana'itau Tuia, who was and is a member of the Alai'asa family and an able legal practitioner in land controversies. Therefore, the Alai'asa was a party to the 1977 actions, and Alai'asa Filifili, as the present *sa'o,* and all present family members are in privity with the Alai'asa as a party to the 1977 actions, for purposes the *res judicata* doctrine.[15]

Lastly, the Alai'asa contend that there was indeed fraud in the 1977 actions and therefore *res judicata* does not apply. The court has permitted attacks on judgments predicated on extrinsic mistake, surprise, excusable neglect, fraud, or similar circumstances, as well as facial nullity. *See Willis,* 4 A.S.R.2d at 145. The Alai'asa's claim of fraud appears to be based on the facts that during the 1977 actions, Tuia'ana

---

[15] Alai'asa Filifili and all present Alai'asa family members are clearly in privity with the Alai'asa who were parties to Case No. 1-1931. Apparently, the Alai'asa do not contend to the contrary, despite the lingering indications that they still claim to own parcel B.

Moi represented the Faleniu *matai*, and that Fanoia Alai`asa Pagofie was told she would not need to testify. These facts, without more, do not prove fraud by a preponderance of the evidence.[16]

Thus, the Alai`asa's arguments that somehow *res judicata* does not apply in the present actions are specious at best. The principle is applicable and protects the property interests in parcel B awarded the Fanene in Case No. 1-1931 and reconfirmed in the 1977 actions, and in sub-parcel A-1 and sub-parcel A-2 awarded to the Fanene, in sub-parcel A-3 awarded to the Fonoti, in sub-parcel A-4 awarded to Tauiliili, in sub-parcel A-S awarded to Sotoa, and in sub-parcel A-6 awarded to Uiva Te'o in the 1977 actions. "There must be an end to litigation someday . . . ." *Puailoa v. Estate of Lagafuaina,* 19 A.S.R.2d 40, 47 (App. Div. 1991) and *Nouata v, Pasene,* 1 A.S.R.2d 24, 35 (App. Div. 1980) (both quoting *Ackerman v. United States,* 340 U.S. 193, 198, 95 L. Ed. 207, 211 (1950)).

4. *Waiver* of *Claims*

 The 1977 actions arose out of the Fanene's offer on May 5, 1976, to register 265.9 acres of the land as the Fanene's communal land. This acreage coincides approximately with parcel A and parcel B combined. The purpose of title registration, pursuant to A.S.C.A. §§ 37.0101-37.0111, is to record the ownership of surveyed land for the world to know. Registration has *in rem* effect, and any claimant who fails to object to the offer of registration by the end of the 60-day notice period prescribed by A.S.C.A. § 37.0103 loses his claim and is forever

---

[16] Alternatively, the Alai`asa bring up the issue of relief under T.C.R.C.P. 60(b). Rule 60(b), however, provides for a method of direct attack on a judgment by motion in the same action, using essentially the same kinds of grounds available for collateral or direct attack in an independent action. The present actions are, of course, independent of the 1977 actions and are therefore inappropriately styled as a Rule 60(b) motion.

Nonetheless, considering the issue raised by a Rule 60(b) motion, for discussion purposes, the Alai`asa's contention for relief still falls short. The only basis for relief under Rule 60(b) is the suggestion that somehow Tuia`ana Moi committed fraud while representing the Faleniu *rnatai* in the 1977 actions. Aside from the lack of any evidence of fraud, intrinsic or extrinsic, a Rule 60(b) motion on this ground must be made not more than one year after the judgment was entered. One year has long since past since the judgment was entered in the 1977 actions. The Alai`asa have not indicated the presence of any other Rule 60(b) grounds. *See Reid v. Puailoa,* 23 A.S.R.2d 101 and 23 A.S.R.2d 144 (Land & Titles Div. 1993) for a comprehensive discussion on the grounds for Rule 60(b) motions.

bound by the subsequent registration, in the absence of fraud or similar circumstances. *Tufono v. Vaeao,* 13 A.S.R.2d 47, 48 (Land & Titles Div. 1989); *Pefu v. Sipili,* 14 A.S.R.2d 70, 77 (Land & Titles Div. 1990).

■ Once again we take note that the Faleniu *matai* timely objected to the Fanene's proposed title registration. However, assuming that the Alai`asa *sa`o* in 1976-1977 is not included in Faleniu *matai's* number, the Alai`asa's failure to object within the 60-day notice period resulted in the Alai`asa's waiver and loss of any claim they had to the all portions of parcel A within the 265.9 acres. *Tufono,* 13 A.S.R.2d at 48. The Alai`asa *sa`o's* absence from American Samoa at that time does not excuse the Alai`asa's failure to object. *Ifopo v. Siatu`u,* 12 A.S.R.2d 24, 28 (App. Div. 1989); *Meatua v, Taliu,* 13 A.S.R.2d 13, 14-15 (Land & Titles Div. 1989); *Vaimaona v. Tuitasi,* 12 A.S.R.2d 68, 71 (Land & Titles Div. 1989). Thus, the Alai`asa are bound by the adjudications in the 1977 actions, whether or not they were parties to that action.[17]

5. *Attorney's Fees and Costs and Rule 11 Sanctions*

The Aiai'asa have initiated litigation by these consolidated actions challenging the previously adjudicated ownership of large parcels of land. Most of the owners awarded these lands have also registered title to their lands. The Alai`asa's causes of action were without merit *ab initio.* They have created clouds on the owners' titles and disparaged the court's decisions, at least for the duration of this litigation. Their actions have seriously disrupted the order intended under our land tenure system. They have wasted judicial resources. They have caused the landowners considerable and enduring emotional distress and expenditure of substantial and unnecessary time and money in defending their titles.

---

[17] Because we are rejecting the Alai`asa's claim to ownership of parcel A, two otherwise important issues are moot for purposes of this order but should be noted. First, the movants raised and the Alai`asa defended certain irregularities in the Alai`asa's offer to register parcel A. We will, for future reference, only state, without detailing those deficiencies, that we are inclined to strictly view the prerequisite requirements for a proper proffer of title registrations, including the mandates on acceptable surveys, and would in any event expect substantial compliance with all requirements.

Second, the Alai`asa also claimed that their title to parcel A, and perhaps parcel B, could not be defeated by adverse possession, because adverse possession cannot be constitutionally applied to communal land and because of insufficient occupancy periods. We do not need to discuss either argument since they are premised on the Alai`asa's rejected claim of ownership.

The undesirable effects of relitigating claims are unnecessary. They are readily avoidable if attorneys and their clients thoroughly research and clearly think through the issues. We need to send a message to attorneys and their clients that this kind of litigation is inappropriate and will bring serious consequences.

■ A party is entitled to recover reasonable attorney's fees and actual costs from a claimant who unsuccessfully relitigates land titles. *See Taulaga v. Patea,* 4 A.S.R.2d 186, 187 (Land & Titles Div. 1987). Hence, we will direct the Alai`asa to pay reasonable attorney's fees and costs to the Fanene, the Fonoti, Tauiliili, and Sotoa, and will assess the amounts upon verified application by these parties.

We will also address the motion for sanctions upon an attorney or a party for violations of the standards established by T.C.R.C.P. 11(b), which states, in relevant part:

> (b) Representations to Court. By presenting to the court . . . a pleading, written motion, or other paper, an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, - -
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of law;
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable inquiry; . . . .

Rule 11(c) allows and provides procedures for imposition of the sanctions, including monetary sanctions. When sanctions are proposed on the court's initiative, the attorney or party at risk must be given an opportunity to show cause why Rule 11(b) was not violated.

■ We believe that there is sufficient evidence of possible violations of Rule 11(b)(1), (2), or (3) to warrant an order to show cause against Alai`asa Filifili and his counsel. Even though it is the attorney whose signature violates Rule 11, it may be appropriate under the circumstances of the case to impose sanctions on a client. *See Browning Debenture Holders Committee v. DASA Corp.,* 560 F.2d 1078 (2d Cir. 1977). After a hearing on this issue, we will decide what, if any, sanctions are appropriate. We give notice to Alai`asa Filifili and his counsel, however, that if we find that sanctions are in order, we will seriously consider

221

holding both of them jointly and severally liable for the amount of the attorney's fees and costs set by the court as payable by the Alai`asa.[18]

## Order

1. We reconfirm the Fanene's title as communal land to parcel B, as awarded in Case No, 1-1931 and reconfirmed in the 1977 actions. We also reconfirm the Fanene's title as communal land to sub-parcel A-1 and sub-parcel A-2, the Fonoti's title as communal land to sub-parcel A-3, Tauiliili's title as individually owned land to sub-parcel A-4, Sotoa's title as individually owned land to sub-parcel A-5, Uiva Te`o's title as individually owned land to sub-parcel A-6, and the Tuia`ana's title as communal land to sub-parcel A-7, as awarded in the 1977 actions.

2. We dismiss LT Nos. 76-90, 77-90, 78-90, and 14-96 with prejudice as these actions relate to parcel B, sub-parcel A-1, sub-parcel A-2, sub-parcel A-3, sub-parcel A-4, sub-parcel A-5, and sub-parcel A-7. These dismissals operate as an adjudication on the merits against the Alai`asa on their claim, if any, to register the title as communal land to parcel B, and on their claim to register the title as communal land to these sub-parcels within parcel A, and in favor of the Fanene, the Fonoti, Tauiliili, and Sotoa, and the Tuia`ana on their respective titles to these lands. Dismissal is unnecessary as to sub-parcel A-6, since Uiva Te`o is not a party to any of these actions.

3. The Territorial Registrar shall register sub-parcel A-1 and sub-parcel A-2, shown respectively as "Parcel 1" and "Parcel 2" in the surveys on exhibit No. 14, in the Fanene's name as communal land, in accordance with A.S.C.A. § 37.0104(b) and (c). For this purpose, the Fanene shall provide the Registrar with a copy of Survey Drawing No. 784-8-94 (exhibit No. 14), and shall ensure that the surveyor has placed boundary monuments on the land and has certified that the survey complies with all requirements provided by the laws and administrative rules of American Samoa. The Fanene shall pay all costs associated with the survey and registration.

---

[18] We cannot consider the imposition of the punitive damages the Fanene seeks against the Alai`asa. Punitive damages to punish and deter are generally appropriate when a person acts outrageously with evil motive or reckless indifference. Restatement (Second) of Torts § 908; *but cf. Sialega v. Taito*, 3 A.S.R.2d 78-80 (Land & Titles Div. 1986). However, we can neither decide whether punitive damages are applicable in the present situation nor characterize the Alai`asa's conduct for that purpose, because the Fanene missed the essential step of pleading punitive damages. 3 B.E. Witkin, *California Procedure* 2400 (2d ed. 1971). We do not intend to set any precedent on punitive damages by this decision, other than this procedural ruling.

4. We will not direct the Territorial Registrar to register sub-parcel A-7 in the Tuia`ana's name as communal land at this time. The Tuia`ana shall, at their expense, file with the court a survey that depicts sub-parcel A-7, complies with all statutory and regulatory survey requirements, and clearly defines the boundaries of sub-parcel A-7 in relation to sub-parcel A-2, sub-parcel A-8 and any other adjacent parcels of land.

5. We dismiss LT No. 12-90 with prejudice, the action involving the Leopole's alleged encroachment on sub-parcel A-2. This dismissal operates as an adjudication on the merits against the Alai`asa and in favor of the Fanene and Leopole.

6. We dismiss LT No. 25-96 with prejudice. This action is now moot.

7. We defer ruling on the motions to dismiss LT Nos. 76-90, 77-90, 78-90, and 14-96 insofar as these actions relate to sub-parcel A-8, until the close of all the evidence, and will then render a judgment on the issues presented. The trial on these actions with respect to any claims to sub-parcel A-8 by the Alai'asa, the Tuia`ana, the Moea`i, the Seigafo, or any other party will reconvene on September 8, 1997, at 9:00 a.m.

8. We further postpone the Alai`asa's motion to set aside the dismissal without prejudice of LT No. 34-81, pending the close of all the evidence relating to sub-parcel A-8.

9. We award reasonable attorney's fees and costs that the Aiai'asa must pay the Fanene, the Fonoti, Tauiliili, Sotoa, and the Tuia`ana. We will conduct a hearing on August 18, 1997, at 9:00 a.m., on the amount of these attorney's fees and costs. We direct Alai`asa Filifili and the Alai`asa's counsel, Tautai A.F. Faalevao, to appear at that hearing to show cause, if any they have, why either or both of them should not be sanctioned for violations of T.C.R.C.P. 11(b)(1), (2), or (3) in prosecuting these actions.

10. We deny the Fanene's request for punitive damages against the Alai`asa.

It is so Ordered.